UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MARK DELI SILJANDER, )<br>Defendant. ) | Case No.: 07-00087-07-CR-W-NKL |

## MARK SILJANDER'S REPLY TO GOVERNMENT'S
## RESPONSE FOR DISCLOSURE OF GRAND JURY MATERIALS

**COMES NOW** Mark Siljander, by and through counsel Robin D. Fowler, and hereby files this reply to the Response of the Government (Doc. 250) to Mr. Siljander's motion seeking disclosure of certain grand jury materials (Doc. 190). In support of this reply, Mr. Siljander states:

**A.    Argument**

Mr. Siljander filed a motion seeking disclosure of grand jury materials arguing that the items sought therein were necessary to his defense to count 32 of the second superseding indictment (hereinafter indictment), which alleges that he obstructed a grand jury investigation. In his motion Mr. Siljander argued that disclosure of the requested grand jury materials was necessary to litigate the issue of the materiality of his alleged false statements; and also the allegation that the agents and government attorneys were acting "on behalf of" the grand jury when they interviewed Mr. Siljander in December of 2005, and April of 2007. Mr. Siljander has also filed a Motion for a Bill of Particulars seeking similar materials (Doc. 193).

In its response the Government claims that Mr. Siljander has all the information necessary to litigate the obstruction charge. The Government claims that its disclosure of: the grand jury subpoena served on Siljander during his first interview; the overall

dates of the grand jury investigation; and the proffer letter and reports of interview are all that Mr. Siljander needs to prepare his defense. The Government claims that a "plain reading of the Indictment is sufficient to litigate whether the issues asserted in count 32 of the indictment" are material to the investigation (brief of Government at 5). The Government says that "the very fact that these assertions are in the indictment answers the question of whether these matters were presented to the grand jury" (brief of Government at 6). The Government continues arguing the information Mr. Siljander seeks "may and will be addressed easily without invading the secrecy of the grand jury's proceeding – through the testimony of the FBI agents themselves" (brief of Government at 7). The Government concludes that "there was no question here whether the agents were acting on behalf of the grand jury from their very first meeting," because during the interview the agents provided a grand jury subpoena to Mr. Siljander for documents.

The Government's position seems to be that Mr. Siljander's statements are material because the grand jury returned an Indictment. Apparently the Government believes that merely alleging materiality in an Indictment proves that the allegations are in fact material. However, allegations made in an Indictment are of course not evidence, and certainly do not constitute proof of materiality. The fact that a grand jury found *probable cause* to believe an obstruction occurred does not mean that a petit jury will find, *beyond a reasonable doubt*, that the same matters were "material" to the grand jury investigation.

To determine whether or not the matters in question are material to the grand jury investigation, it seems pretty basic that one must know what that investigation consisted of. To determine whether or not government agents and attorneys were acting "on behalf of" the grand jury, is also seems basic that one should know whether or not the grand jury was even aware of the fact that such an interview would occur, or in any manner directed or caused the attorneys and/or agents to conduct the interview on its behalf. Mr. Siljander is not trying to "invade" the secrecy of the grand jury, he merely seeks the ability to defend himself against allegations which the Government choose to bring against him.

If the Government, for example, indicting someone for committing perjury at trial, it would be ludicrous for them to take the position that the entire trial should not be examined to determine whether or not the alleged perjured testimony was "material." Yet that is what the Government is saying here, when it argues that Mr. Siljander has not shown a "particularized need" for the testimony and other items which comprise the grand jury investigation. Mr. Siljander has a rationale, logical, particularized need for the grand jury matters sought in his motion, which is all that Rule 6(e) requires.

In its response to his motion the Government calls Mr. Siljander's reliance on *United States v. Aguilar*, 515 U.S. 593 (1995) "misplaced." To the contrary, *Aguilar* is clearly a case relevant to the discovery issues in this case. *Aguilar* is a fairly recent Supreme Court interpretation of 18 U.S.C. 1503, and in examining that statute the Court stated that the act charged "must have a relationship in time, causation, or logic with the judicial proceedings". 515 U.S. at 599. It noted that "[W]e do not believe that uttering false statements to an investigating agent--and that seems to be all that was proved here--who might or might not testify before a grand jury is sufficient to make out a violation of the catch-all provision of 1503." 515 U.S. at 600. This despite the fact that the defendant in *Aguilar* asked the agent during the interview whether he was the target of a grand jury investigation, and was told that there was a grand jury "meeting … some evidence will be heard…" *Id.*

The Court also noted that "what use will be made of false testimony given to an investigating agent who has not been subpoenaed or otherwise directed to appear before the grand jury is far more speculative. We think it cannot be to have the 'natural and probable effect' of interfering with the due administration of justice." *Id.* at 601. *Aguilar* also said that the Government "did not show here that the agents acted as an arm of the grand jury, or indeed that the grand jury had even summoned the testimony of these particular agents." *Id.* at 600.

Based on the language of 1503, the allegations in the Indictment, and the holding of *Aguilar*, Mr. Siljander believes it is critical for the petit jury to know the answers to certain core questions. These answers remain hidden by the Government, under the spurious assertion that Mr. Siljander is trying to "invade" the secrecy of the grand jury.

3

Among other issues, it is critical to Mr. Siljander's defense to know whether the grand jury was even aware of the interviews before they occurred. When did the agents testify in the grand jury; and when were they "summoned" (to use the language of *Aguilar*)? Did the grand jury ever ask the government attorneys, and/or agents, to interview Mr. Siljander on their behalf? Did they provide any direction or questions that they wished directed to Mr. Siljander? On what basis were the agents and/or attorneys acting on behalf of the grand jury? Was there a discussion as to whether Mr. Siljander should appear at the grand jury in lieu of an interview with the agents? Did the grand jury give any hints as to what topics they felt were critical to this interview? If agents did testify before the grand jury about the interviews with Mr. Siljander, when did they testify, and what did they say?

It is Mr. Siljander's position that government attorneys and agents most likely interviewed him in December of 2005 without a single grand juror being aware of that interview. If that is in fact true, it is a violation of Mr. Siljander's Constitutional Due Process rights to claim that this information must remain secret under Rule 6(e). It would in fact be *Brady* material, and should be disclosed voluntarily by the Government. It also seems difficult to establish, as the Indictment has alleged, that the agents were acting on behalf of the grand jury. Perhaps this guess is inaccurate, but Mr. Siljander should not have to go to guess, as we go to trial, whether or not the grand jury was aware that he was to be interviewed. And he should not have to learn this information, if he learns it at all, through the testimony of FBI agents at trial.

It is less clear the status of the grand jury's knowledge regarding the April, 2007 interview of Mr. Siljander. Perhaps the grand jury knew of this interview before it happened, perhaps they did not. Once again, Mr. Siljander should not have to guess about this, and have to wait for the trial testimony of FBI agents before finding out whether or not the grand jury was aware of the interview; and whether or not any member of the grand jury asked the government attorneys, and/or agents, to interview Mr. Siljander on its behalf. Whether or not this is true, this is critical evidence regarding whether or not the agents and attorneys were acting on behalf of the grand jury, as alleged in the indictment.

In addition, it is critical to Mr. Siljander's defense that he learn when, and how, his statements were relayed to the grand jury. When was the information he provided in December, 2005 provided to the grand jury, and how was it characterized? How did the grand jury respond to that information? Was it cumulative to other evidence obtained in the investigation, and therefore not "material?" Was there any colloquy between government attorneys and the grand jury regarding Mr. Siljander, or his statements? The same questions can be asked regarding his April, 2007 interview. The answers to these questions would potentially have an enormous impact on the petit jury's materiality findings at trial.

Mr. Siljander, in his motion seeking disclosure of grand jury materials, asked for the following:

1. Transcripts of any colloquy between any AUSA's & grand jury.
2. All witness transcripts.
3. Copies of all grand jury subpoenas, as well as information concerning who issued the subpoena (i.e., AUSA or grand jury request). Also, the date the grand jury was informed of the issuance of each subpoena (if not done at their request), and the date any information obtained from the subpoena was provided to the grand jury.
4. Copies of all exhibits provided to grand jury, and date(s) the exhibit was shown.
5. Copies of any legal instructions provided to the grand jury.

At oral argument this Court expressed some concern about disclosure of the entire grand jury file, and questioned why such broad disclosure was necessary, and if so how it would occur. First, if the Court thought it appropriate, Mr. Siljander would agree that undersigned counsel could look, on an ex parte basis, at the grand jury materials; and seek court approval before attempting to use, or disclose, any of the grand jury matters. Having been an Assistant United States Attorney for over 15 years in the District of Kansas, undersigned counsel is well aware of the reasons for grand jury secrecy. Mr. Siljander would suggest that such an examination would allow Mr. Siljander to prepare his defense, without risking improper disclosure of any grand jury materials.

Mr. Siljander believes that each category of information is necessary to review to prepare his defense on the materiality and "on behalf of" issues. The timing as to when various matters were presented to the grand jury is also important, given the nexus

5

requirements described in Aguilar, and discussed briefly above. Mr. Siljander is aware that there are good reasons for the privacy of grand jury materials in Rule 6(e). However, there are also many situations where disclosure of grand jury materials, pursuant to the holding in *Dennis v. United States*, 384 U.S. 855 (1966). *Dennis v. United States*, 384 U.S. 855, 16 L.Ed.2d 973, 86 S.Ct. 1840 (1966) (Confirming the trial court's power under Rule 6(e) to direct disclosure of grand jury testimony and acknowledging a "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice" and the "expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice".) Once the Government elected to charge Mr. Siljander with obstruction of a grand jury investigation in the manner set out in count 32, a "particularized need" for these documents was created. For example, in *United States v. Gant*, 119 F.3d 536 (7th Cir. 1997), the foreperson of the grand jury testified about the nature of the grand jury investigation in an obstruction case. This testimony was not an "invasion" of grand jury secrecy, but was instead relevant evidence in an obstruction case involving a grand jury investigation.

In *United States v. Ostertag*, 671 F.2d 262 (8th Cir. 1982); and *United States v. Ashby*, 748 F.2d 467 (8th Cir. 1984), the Eighth Circuit discussed possible methods the government might use to prove materiality in a case involving allegations of perjury before a grand jury. Both cases pre-dated *United States v. Gaudin,* 515 U.S. 506 (1995), so the issue of materiality was at that time one for the court, not the jury, to decide. In each case the circuit court said that that while it would have been preferable for the government to have introduced the entire transcript, in neither case did the conviction get reversed. In *Ostertag* the court held that the district court "had adequate evidence of the scope of the investigation before him and did not err in denying appellant's motion for judgment of acquittal. 671 F.2d at 265. In *Ashby* the court found that the case was not complex (involving only a single bank robbery), and noted that "the district court had both the testimony of the grand jury foreman and the testimony of appellant before the grand jury". 748 F.2d at 470.

6

In contrast to the above cases, this case, and investigation, was assuredly complex in nature, and extensive in the length of the investigation. In addition, the issue of materiality is now a jury question, which makes disclosure of the information sought even more important than when the court alone decided materiality, as it is now an element of the offense which must be proven beyond a reasonable doubt. The cases listed above show why this type of an allegation, i.e., obstruction of a grand jury investigation, is so different than the normal case in presenting a rationale and logical need for review of grand jury materials for which there is normally no particularized need to disclose.

In its response the Government cited two cases in support of its position that disclosure of certain grand jury matters was not appropriate. Neither involves an obstruction charge, which is of course the basis for the particularized need for disclosure in this case. In *United States v. McKie*, 831 F.2d 819 (9th Cir. 1987), the court held that grand jury proceedings are presumed to be regular. Mr. Siljander does not dispute that his grand jury proceedings were "regular," and is not alleging that anything improper occurred in the grand jury in his case. He instead assumes the investigation was a normal one, and simply wishes to view the evidence in that investigation to be in a position to litigate the issues discussed above. The other case cited by the Government, *United States v. Murillo-Conreras*, 81 Fed. Appx. 690 (9th Cir. 2003) merely held that a defendant is not normally entitled to grand jury transcripts of persons who testify before a grand jury, but not at trial. Absent the obstruction charge in this case, Mr. Siljander would likewise not be entitled to any similar transcripts of persons who do not testify at trial.

**B.     Conclusion**

The Government has alleged that Mr. Siljander obstructed a grand jury investigation. The Government also claims that it need not disclose the details of that investigation, but can satisfy its discovery obligations by disclosing just the interviews of Mr. Siljander, the proffer letter and grand jury subpoena issued to him, and the overall dates the grand jury was allegedly investigating this case. This is insufficient. Mr.

Siljander cannot defend a charge of obstruction of a grand jury investigation while the facts of that investigation remain hidden. Mr. Siljander cannot defend an allegation that agents and attorneys were acting on behalf of a grand jury when he is denied access to information that would prove or disprove that allegation. The government cannot charge obstruction of a grand jury investigation, and then claim that critical, relevant evidence cannot be disclosed due to secrecy concerns. For all of these reasons, Mr. Siljander seeks disclosure of the items sought in his motion, or in the alternative the dismissal of Count 33 of the Indictment.

Respectfully submitted:

*/s/ Robin D. Fowler*

_____
Robin D. Fowler            MO #000348
**BATH & EDMONDS, P.A.**
7944 Santa Fe Drive
Overland Park, KS  66204
(913) 652-9800
Facsimile (913) 649-8494
E-mail:  robin@bathedmonds.com
Attorney for Mark Siljander

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2009 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties of record herein.

*/s/ Robin D. Fowler*

_____
Robin D. Fowler

8
Case 4:07-cr-00087-NKL   Document 262   Filed 06/24/09   Page 8 of 8