IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action |
| v. | ) | No. 07-CR-00087-07-W-NKL |
| | ) | |
| **MARK DELI SILJANDER**, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Beth Phillips, United States Attorney, Assistant United States Attorney Anthony P. Gonzalez, Assistant United States Attorney Steven M. Mohlhenrich, and United States Department of Justice Trial Attorney Paul G. Casey, and Defendant MARK DELI SILJANDER ("Defendant"), represented by Linda Moreno and Lance D. Sandage. Defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** Defendant agrees to and hereby does plead guilty to Count Thirty-Two (32) of the Second Superseding Indictment, and to waive his right to grand jury indictment and plead guilty to the single-count Information (DE 537.) Count Thirty-Two of the

DEFENDANT INITIALS:  M.D.S.

Second Superseding Indictment charges Defendant with violation of 18 U.S.C. §§ 1503(a) and 1512(i) (Obstruction of Justice). The Information charges Defendant with violation of 22 U.S.C. §§ 612 and 618 (the Foreign Agents Registration Act). Defendant expressly waives any right to object to or otherwise challenge the charge listed in the Information based on statute of limitations, jurisdiction, or venue. By entering into this plea agreement, Defendant admits that he knowingly and willfully committed these offenses, and is in fact guilty of these offenses.

   **3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which Defendant is pleading guilty are as follows:

### Background

   A. Defendant Mark Deli Siljander (Siljander) is United States citizen and was, at all times relevant, a resident of Virginia. Siljander is a former member of the United States House of Representatives, from the State of Michigan. At all times relevant, Siljander operated a consulting business known as Global Strategies, Inc. At no time relevant was Siljander a registered agent of any "foreign principal," as that term is defined in 22 U.S.C. § 611(b), and that no lawful exemption existed permitting him to act as such an agent without registering with the Attorney General.

   B. Defendant Abdel Azim El-Siddig (El-Siddig) is, and was at all times relevant, a naturalized United States citizen and resident of Illinois. At all times relevant, El-Siddig was associated with, and worked as a fund-raiser for, the Islamic American Relief Agency.

   C. The Islamic American Relief Agency (IARA) was an Islamic charitable organization based in Columbia, Missouri, that was the United States office of an international organization headquartered in Khartoum, Sudan. Originally, the Columbia, Missouri office of IARA was known as the Islamic African Relief Agency-United States Affiliate, or IARA-USA. On May 25, 2000, IARA legally changed its name to the Islamic American Relief Agency.

   D. At all times relevant, Defendant Mubarak Hamed (Hamed) was the Executive Director of IARA, in Columbia, Missouri.

   E. The office of IARA located in Missouri operated as part of and at the direction and control of IARA located in Khartoum, Sudan. IARA operated as one organization with its principal place of business in Sudan. At all relevant times, the persons who incorporated

DEFENDANT INITIALS: M.D.S.                -2-

Case 4:07-cr-00087-NKL   Document 539   Filed 07/09/10   Page 2 of 18

the IARA branch in Missouri and others concealed from the state and federal government that the locally incorporated branch was part of and controlled by IARA of Khartoum, Sudan. IARA had more than 40 international offices, over which the Khartoum, Sudan headquarters exercised control. This control included the authority to appoint the chief executives of each international office, the authority to transfer personnel between international offices, the authority to decide what projects and goals the subordinate offices would and did undertake, and the authority to direct funds raised by one international office to projects undertaken by another office. IARA's principal place of business in Khartoum, Sudan was organized under the laws of Sudan. Based on the degree of control exercised by IARA's headquarters in Khartoum, Sudan, the IARA office in Columbia, Missouri was an agent and part of that organization. IARA was an international organization with its principal place of business in Khartoum, Sudan and organized under the laws of Sudan and was therefore a "foreign principal" as that term is defined in 22 U.S.C. § 611(b)(3).

F. Beginning about January 1, 1997, IARA entered into a series of written cooperative agreements with the United States Agency for International Development (USAID) for two relief projects in Mali, Africa. The agreements were terminated by USAID on or about December 19, 1999, and as of December 20, 1999, IARA was prohibited from obtaining any further USAID contracts. IARA was informed that the agreements were terminated because they were not in the United States' national interest. Later, IARA was debarred from any procurement transactions with any part of the Executive Branch of the United States government.

G. On January 14, 2004, IARA was included on a United States Senate Finance Committee list identifying charities suspected of funding terrorism. Shortly thereafter, Hamed and the Board of Directors decided that IARA should hire a person or persons to advocate for IARA's removal from the list.

## Violation of the Foreign Agents Registration Act

H. On January 24, 2004, with the assistance of El-Siddig and Siljander, Hamed, on behalf of IARA, hired a former United States Congressman and registered lobbyist, hereinafter identified by the initials "R.P.H.," to advocate for IARA's removal from the list and reinstatement as an approved government contractor, by gathering information and meeting with individuals and agencies of the United States government. On January 24, 2004, Hamed signed a $15,000 check that was issued to R.P.H., drawn on IARA's principal bank account. For his assistance in brokering the transaction, Siljander received $6,000 in referral fees from R.P.H.

I. Between March and May, 2004, Hamed and El-Siddig, on behalf of IARA, hired Siljander to advocate for IARA's removal from the list and reinstatement as an approved government contractor, by gathering information and meeting with individuals and agencies of the United States government.

DEFENDANT INITIALS: M.D.S. -3-

J. Hamed, El-Siddig and Siljander each knew that IARA was part of a large international organization controlled by its headquarters, in Khartoum, Sudan, and knowingly and willfully agreed with each other to mis-characterize Siljander's efforts and relationship with IARA. Hamed's discussions with Siljander included two telephone conversations, which took place April 28, 2004, and May 6, 2004. In those conversations, they discussed the work Siljander was performing on behalf of IARA. Regarding the method of payment for the services, Siljander told Hamed, ". . . I think we oughta do this number one through foundations and not professionally," and advised Hamed to transfer funds from IARA to himself by funneling them through nonprofit entities. Siljander then relayed the details regarding how to transfer the funds to Hamed through El-Siddig.

K. On May 24, 2004, El-Siddig signed a $25,000 check that was issued to Siljander, drawn on an account at LaSalle Bank, in Chicago, Illinois, held in the name of IARA, which was made payable to an entity called the International Foundation. On May 27, 2004, Hamed signed a $25,000 check that was issued to Siljander, drawn upon IARA's North Mali account, which was made payable to an entity called the International Foundation. On August 26, 2004, Hamed signed two checks that were issued to Siljander, each in the amount of $12,500; the first was drawn upon IARA's North Mali account, and was made payable to an entity called the National Heritage Foundation, and the second was drawn upon IARA's Mali Project account, and was also made payable to National Heritage Foundation. All of these checks, totaling $75,000, were payments for Siljander's services.

L. At various times in and after June, 2004, Siljander acted as an agent for a foreign principal in that he contacted persons at USAID, the United States Department of Justice, the United States Senate Finance Committee, and the United States Department of the Army, in an effort to have IARA removed from the USAID list of debarred entities, and to remove IARA from the Senate Finance Committee's list of charities suspected of funding terrorism.

M. At various times between June and October 2004, El-Siddig reported to IARA on the progress of Siljander's efforts on behalf of IARA.

N. By pleading guilty to the Information, Siljander admits that he knowingly advocated before Congress and the Executive Branch on behalf of a foreign principal, and further he knew that such advocacy was unlawful since he had not reported it to or registered with the proper authorities.

## Obstruction of Justice

O. Siljander knew that IARA was the subject of a grand jury investigation. On October 13, 2004, search warrants were executed upon the premises of IARA, and at Hamed's residence in Columbia, Missouri. The same day, IARA along with its headquarters in Khartoum, Sudan, and five individuals located overseas, was designated a Specially Designated Global Terrorist (SDGT) by OFAC. Siljander knew of these government actions very shortly after they took place.

P. On December 13, 2005, in Arlington, Virginia, FBI Special Agents served Siljander with a grand jury subpoena and interviewed him in connection with the investigation. During that interview, Siljander made the following false statements, as charged in Count 32 of the Second Superseding Indictment: (1) that he had not been hired to perform any advocacy services for IARA; (2) that he had not performed any advocacy services for IARA; and (3) that the payments he had received from the IARA were charitable donations intended to assist him in writing a book about bridging the gap between Islam and Christianity.

Q. On March 6, 2007, the grand jury returned the original indictment in this case. On April 23, 2007, federal prosecutors provided Siljander, through his attorneys, with a "proffer letter" confirming that he was a target of the continuing investigation, and setting forth the ground rules for an interview. The letter advised Siljander that should he "intentionally provide any false, incomplete, inaccurate or misleading information or testimony," any statement he made could be used to prosecute him for other criminal violations, including obstruction of justice.

R. On April 26, 2007, at the United States Attorney's Office in Kansas City, Missouri, Siljander signed the bottom of this letter, acknowledging its terms, as did his attorneys. After signing the proffer letter, Siljander was interviewed by FBI Special Agents and prosecutors, in the presence of his attorneys. During that interview, Siljander made the following false statements as charged in Count 32 of the Second Superseding Indictment: (1) he had performed no services in exchange for the money he received from IARA; (2) the payments he had received from IARA were charitable donations intended to assist him in writing a book about bridging the gap between Islam and Christianity; and (3) he had not spoken to anyone from IARA on the telephone about performing services for the organization, or for any reason other than to thank the organization for its "donation."

S. Siljander admits that when he made each of the statements identified in the sub-paragraphs above, he then well knew and believed that each statement was false, in that: (1) he had been hired by IARA to perform services; (2) he had performed services for IARA; (3) the payments he had received from the defendant IARA were compensation for the services he had been hired to perform, not charitable donations; and (4) he had discussed performing services for IARA, and routing payment for those services through non-profit foundations, on the telephone with Hamed and El-Siddig.

T. Siljander admits that the above false statements were material, because the grand jury sought information that included: (1) whether the IARA had retained anyone to perform advocacy services; (2) whether anyone had performed advocacy services on behalf of IARA; (3) whether IARA had used funds it had received from charitable donations or USAID funds to pay for advocacy services; (4) whether anyone had engaged in monetary or financial transactions involving charitable donations or USAID funds and, if so, the nature and purpose of said transactions; and (5) what discussions had taken place regarding those matters, and who had been involved in any such discussions.

DEFENDANT INITIALS: M.D.S. -5-

U. Finally, Siljander admits that by making the false statements, he did so with the intent to obstruct and impede the due administration of justice.

**4. Use of Factual Admissions and Relevant Conduct.** Defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of Defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). Defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty. Defendant understands that Paragraph 10 contains the parties' stipulations regarding the calculation of Defendant's offense level, and that while those matters are agreed between the parties, they are not binding upon the Probation Office or the Court.

**5. Statutory Penalties.**

A. Defendant understands that upon his plea of guilty to Count Thirty-Two of the Second Superseding Indictment, charging him with violation of 18 U.S.C. §§ 1503(a) and 1512(i) (Obstruction of Justice), the maximum penalty the Court may impose is not more than ten (10) years of imprisonment, a fine of $250,000 a three (3) year term of supervised release, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. Defendant further understands that this offense is a Class C felony.

B. Defendant understands that upon his plea of guilty to the single-count Information, charging him with violation of 22 U.S.C. §§ 612 and 618, that is, the Foreign Agents Registration Act, the maximum penalty the Court may impose is not more than five (5) years of imprisonment, a fine of $250,000, a three (3) year term of supervised release, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. Defendant further understands that this offense is a Class D felony.

**6. Sentencing Procedures.** Defendant acknowledges, understands and agrees to the following:

    A. In determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than Defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable;"

    B. The Court will determine Defendant's applicable Sentencing Guidelines range at the time of sentencing;

    C. In addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    D. If Defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of Defendant's first supervised release;

    E. The Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    F. Any sentence of imprisonment imposed by the Court will not allow for parole;

    G. The Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

    H. Defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against Defendant for any federal criminal offenses related

to the conduct charged in the Second Superseding Indictment, for which it has venue and which arose out of Defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts Twenty-Eight through Thirty-One (28-31), and the Forfeiture Allegation of the Second Superseding Indictment, at sentencing.

Defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

Defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which Defendant might be charged is based solely on the promises made by Defendant in this agreement. If Defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. Defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. Defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. Defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. Preparation of Presentence Report.** Defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of Defendant, including the entirety of his criminal activities. Defendant understands these disclosures

are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by Defendant or Defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and Defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

      **9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of Defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, Defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if Defendant can show a fair and just reason for requesting the withdrawal. Defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside Defendant's applicable Sentencing Guidelines range, or imposes a sentence that Defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

      **10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

      A. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below Defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable;"

B. For Count Thirty-Two of the Second Superseding Indictment, the applicable Guidelines section is U.S.S.G. § 2J1.2, which provides for a base offense level of 14. The parties agree that the U.S.S.G. § 2J1.2(b)(3) enhancement should not apply. Regarding the U.S.S.G. § 2J1.2(c) cross-reference, the offense investigation Defendant endeavored to obstruct involved money laundering of the proceeds of the theft of public money, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h), for which the offense level for an accessory after the fact would be no more than 14;

C. For the single-count Information, charging violation of 22 U.S.C. § 612 (the Foreign Agents Registration Act), no offense Guideline has been expressly promulgated, and, pursuant to U.S.S.G. § 2X5.1 under the circumstances of this case, the provisions of 18 U.S.C. § 3553 shall control. The Government agrees that in this case it will not advocate that this felony violation results in any increase in Defendant's base offense level above that contemplated by Count Thirty-Two;

D. Defendant has admitted his guilt and clearly accepted responsibility for his actions. Consequently, he is entitled to a two-level reduction pursuant to § 3E1.1(a) of the Sentencing Guidelines;

E. Defendant's criminal history category appears to be Category I. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

F. Defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide Defendant with a basis to withdraw his plea of guilty;

G. Both parties expressly reserve the right to argue for a departure from the Guidelines range, or a sentence outside the Guidelines range;

H. Defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of Defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. Defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. Defendant also agrees that the Court, in finding the

facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

I. Defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** Defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** Defendant understands that the United States expressly reserves the right in this case to:

A. Oppose or take issue with any position advanced by Defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

B. Comment on the evidence supporting the charges against Defendant Siljander in the Second Superseding Indictment;

C. Oppose any arguments and requests for relief Defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence

actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

      D. Oppose any post-conviction motions for reduction of sentence, or other relief.

**14. <u>Waiver of Constitutional Rights.</u>** Defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

      A. The right to plead not guilty and to persist in a plea of not guilty;

      B. The right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

      C. The right to a jury trial, and at that trial, the right to the effective assistance of counsel;

      D. The right to confront and cross-examine the witnesses who testify against him;

      E. The right to compel or subpoena witnesses to appear on his behalf; and

      F. The right to remain silent at trial, in which case his silence may not be used against him.

Defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. Defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if Defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. Defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

DEFENDANT INITIALS: __M.D.S.__            -12-

**15. Waiver of Appellate and Post-Conviction Rights.**

    A. Defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    B. Defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), Defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

  **16. Financial Obligations.** By entering into this plea agreement, Defendant represents that he understands and agrees to the following financial obligations:

    A. Neither forfeiture nor an order of restitution is contemplated by this plea agreement;

    B. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to collect any fine that may be ordered as part of the sentence in this case and;

    C. Defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. Defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until Defendant has satisfied any financial obligations ordered by the Court in full;

    D. Within 10 days of the execution of this plea agreement, at the request of the USAO, Defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that Defendant submits to the U.S. Probation Office. Defendant understands that compliance with
DEFENDANT INITIALS:  M.D.S.               -13-

these requests will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility;

  E. Defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating Defendant's ability to satisfy any financial obligations imposed as part of the sentence;

  F. Defendant understands that a Special Assessment will be imposed as part of the sentence in this case. Defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. Defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

  G. Defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations that may be imposed by the Court; nor (2) hindering efforts of the USAO to enforce such financial obligations. Moreover, Defendant promises that he will make no such transfers in the future; and

  H. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full amount of any fines imposed, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. Defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** Defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

DEFENDANT INITIALS:  M.D.S.                  -14-

**18. Waiver of Claim for Attorney's Fees.** Defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Agreement to Destruction of Biological Evidence.** In accordance with 18 U.S.C. § 3600A(c)(2), Defendant knowingly and voluntarily waives his right to request DNA testing of any biological evidence which may have been obtained or seized by law enforcement in his case. Defendant agrees that all biological evidence which may have been obtained or seized may be destroyed by law enforcement authorities.

**20. Defendant's Breach of Plea Agreement.** If Defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if Defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. Defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

Defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. Defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence,

or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**21. <u>Defendant's Representations</u>.** Defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. Defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. Defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**22. <u>No Undisclosed Terms</u>.** The United States and Defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**23. <u>Standard of Interpretation</u>.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and

ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                                               BETH PHILLIPS
                                                                United States Attorney

Dated: July 7, 2010                     /s/ ANTHONY P. GONZALEZ
                                                                 ANTHONY P. GONZALEZ
                                                                 Assistant United States Attorney

Dated: July 7, 2010                     /s/ STEVEN M. MOHLHENRICH
                                                                 STEVEN M. MOHLHENRICH
                                                                  Assistant United States Attorney

Dated: July 7, 2010                     /s/ PAUL G. CASEY
                                                                 PAUL G. CASEY
                                                                 Trial Attorney, Counterterrorism Section
                                                                National Security Division, U.S. Dept. of Justice

I have consulted with my attorneys and fully understand all of my rights with respect to the offenses charged in the Second Superseding Indictment and Information. Further, I have consulted with my attorneys and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorneys. I understand this plea agreement and I voluntarily agree to it.

Dated: July 7, 2010          /S/ MARK DELI SILJANDER
                             MARK DELI SILJANDER
                             Defendant

We are Defendant MARK DELI SILJANDER's attorneys. We have fully explained to him his rights with respect to the offenses charged in the Second Superseding Indictment and Information. Further, we have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. We have carefully reviewed every part of this plea agreement with him. To our knowledge, MARK DELI SILJANDER's decision to enter into this plea agreement is an informed and voluntary one.

Dated: July 7, 2010          /S/ LINDA MORENO
                             LINDA MORENO
                             Attorney for Defendant

Dated: July 7, 2010          /S/ LANCE D. SANDAGE
                             LANCE D. SANDAGE
                             Attorney for Defendant

DEFENDANT INITIALS: M.D.S.                    -18-